UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                           Plaintiff,<br>v.<br><br>JEFFREY E. WALL<br>and THE LIGHTHOUSE EVENTS, LLC<br><br>                           Defendants, | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges the following against Defendants Jeffrey E. Wall ("Wall") and The Lighthouse Events, LLC ("Lighthouse"):

## SUMMARY

1. This case involves a securities offering promoted through false and misleading representations by Wall and his entity Lighthouse, which describes itself as a ministry located in Freeport, Maine that hosts Christian music concerts and festivals. The Defendants' actions also constitute what is known as an "affinity fraud," which refers to investment scams that prey upon members of identifiable groups, such as religious or ethnic communities. In this case, the Defendants defrauded investors who shared Wall's religious views.

2. Between early 2014 and October 2018, Wall and Lighthouse raised more than $3 million from approximately 145 investors through a promissory note program. Wall intentionally made false representations to entice investors and hid the risks associated with the investment. The promissory notes in this case are securities that are subject to the federal securities laws enforced by the Commission.

3. Wall falsely told potential investors that the funds entrusted to him would be used solely to promote and host Christian music concerts and festivals. He claimed that repayment was "secured" and "guaranteed" within 12 months of the initial investment, with a fixed return ranging from 10% to 25%. Instead, Wall used investor funds for other expenses, including payment of Wall and Lighthouse's high-interest debt from cash advances and payments to earlier investors using later investors' money. Wall also failed to disclose material information to potential investors, including Lighthouse's deteriorating financial condition from declining ticket sales, its growing debt from cash advances, and its inability to repay investors as promised; neither Wall nor Lighthouse pledged any collateral and they had no assets or other way to repay investors if Lighthouse failed to generate a sufficient profit from ticket sales.

4. Wall and Lighthouse quickly fell into arrears with investors; by the end of the four-year scheme, Defendants had only repaid approximately half of the $3 million in principal solicited from investors. As a result, Wall and Lighthouse have failed to repay approximately $1.6 million of the monies fraudulently collected from investors.

## NATURE OF THE PROCEEDING AND RELIEF SOUGHT

5. The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77t(b)] and Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§78u(d) and 78u(e)]. The Commission seeks permanent injunctions against Wall and Lighthouse, enjoining them from committing further violations of the relevant provisions of the federal securities laws; entry of a permanent injunction prohibiting specific conduct by Wall and Lighthouse related to the violations alleged; disgorgement of all ill-gotten gains from the unlawful conduct set forth in this Complaint, together with prejudgment interest; civil penalties pursuant to Section 20(d) of the Securities Act [15

U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and such other relief as the Court may deem appropriate.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b) and 77v(a)], and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§78u(d), 78u(e), and 78aa].

7. Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. §78aa], because Wall and Lighthouse reside and transact business in the District of Maine, and many of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the district.

8. Defendants have, directly or indirectly, made use of the means and instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the acts, practices, and courses of business alleged in this complaint.

9. Defendants' conduct took place in connection with the offer and/or sale of securities.

## DEFENDANTS

10. **Jeffrey E. Wall**, age 55, is a resident of Freeport, Maine. Wall is the founder and sole member of The Lighthouse Events, LLC.

11. **The Lighthouse Events, LLC** ("Lighthouse") is a limited liability company operated out of Wall's residence in Freeport, Maine. Prior to formation as an LLC in April 2015, Lighthouse operated as an unincorporated entity. Lighthouse describes itself as a Christian ministry that promotes, organizes, and hosts Christian music concerts and festivals.

## **LIGHTHOUSE'S FINANCIAL CONDITION**

12. Wall formed Lighthouse in approximately August 2008 as a Christian concert ministry to promote, organize, and host Christian music concerts and festivals in the northeast United States and Canada. Lighthouse's website claims that in the last ten years, it has hosted more than 800 concerts at over 50 churches and launched three music festivals.

13. Lighthouse's upfront expenses to host a music concert or festival include deposits for the artists and venues, radio promotions, and other production-related costs.

14. Lighthouse's primary source of income is ticket sales, which includes advance sales on Lighthouse's website as well as direct sales at the music venue. Lighthouse processes advance ticket sales on its website by using a third-party payment processor to collect money and then transfer it a bank account Wall uses for Lighthouse's expenses.

15. Visitors to Lighthouse's website, including people purchasing concert tickets, provide Lighthouse with an email address. Lighthouse collects these email addresses and regularly sends out mass-marketing emails to promote concerts and festivals, as well as for other marketing purposes.

16. As early as 2014, Wall, both individually and on behalf of Lighthouse, began borrowing money from companies that provide short-term cash advances to small businesses in need of immediate cash flow. These cash advances typically are subject to short repayment periods, high rates of interest, and a daily remittance schedule (that is, mandatory direct debits from a bank account each business day until the debt is paid). Wall and Lighthouse borrowed a total of approximately $700,000 from over one dozen cash advance companies, with most of the borrowing occurring after mid-2016. Repayments of these cash advances from 2014 through October 2018, including interest, totaled approximately $1.1 million.

17.     Wall and Lighthouse were unable to repay all of the debt incurred from cash advances.  As a result, between October 2017 and June 2018, at least five cash advance companies obtained court-ordered judgments against Wall individually and Wall doing business as Lighthouse for a total of more than $142,000.  The judgments authorized the cash advance companies to garnish (i.e., seize money directly from) Wall and Lighthouse's bank accounts, as well as the proceeds from on-line ticket sales received by Lighthouse's third-party payment processor.

## WALL'S SCHEME TO DEFRAUD

18.     From approximately January 2014 through October 2018 (the "Relevant Period"), Wall and Lighthouse raised more than $3 million from approximately 145 investors by offering an investment in promissory notes.  A promissory note is a financial instrument that contains a written promise by one party (here, Lighthouse) to pay another party (the investor) a definite sum of money, either on demand or at a specified future date.

19.     Wall and Lighthouse were required to, but did not, register the promissory note offering with the Commission.  Registering this offering would have required Lighthouse to provide prospective investors certain documents disclosing its financial condition and the risks associated with this investment.

20.     Wall solicited investments primarily through mass marketing email blasts, using the email addresses he compiled through Lighthouse's website.  In addition, during the Relevant Period, Lighthouse's website contained a tab titled "Become an Investor" and prompted individuals to submit their names and email addresses.  Wall also solicited investors directly at Lighthouse events.  As a group, the potential investors comprised persons self-identifying as Christian who were attracted to Lighthouse as a Christian organization.

21.     A typical mass solicitation email stated: "Become a financial partner with our summer festivals.  Help us spread the message of Christ plus earn 20% on your investment.  To learn more please e-mail Jeff Wall at jeff@thelighthouseevents.com."

22.     Potential investors who thereafter contacted Wall received more specific terms about the investment.  Lighthouse's promissory notes provided for a monthly repayment of the principal plus a return of 10% to 25%, depending on the amount invested, over a 12-month period.

23.     To induce potential investors to invest in Lighthouse, Wall, from at least 2015 onward, repeatedly made one or more of the following material misrepresentations in email correspondence, text messages, and telephone calls, as well as in written promissory notes:

- First, Wall falsely represented that investor money would be used exclusively for deposits and other costs associated with Lighthouse's music concerts and festivals.  In actuality, Wall never implemented any mechanism to track the use of investor funds to ensure that they were used exclusively for the stated purpose.  From the beginning, Wall primarily used one Lighthouse bank account to deposit all Lighthouse revenues and pay all expenses.  As the profitability of Lighthouse's concerts and festivals dwindled and its borrowing from cash advance companies increased, investor funds were also used for the payment of daily remittances and court-ordered judgments to the cash advance companies as well as for payments to prior investors on older promissory notes.

- Second, Wall "guaranteed" the repayment of the promissory notes with a fixed annual return ranging from 10% to 25%.  At the time he made this claim, Wall knew, or was reckless in not knowing, that he could not guarantee payment and that he could only repay investors if Lighthouse's concerts and festivals were sufficiently profitable.

- Third, Wall told prospective investors that the promissory notes were "secured," explicitly stating to some investors that repayment of principal plus interest was not dependent on the success of any concert or music festival. Neither Wall nor Lighthouse ever pledged any collateral to secure the promissory notes. At the time he made this claim, Wall knew, or was reckless in not knowing, that he had no means to repay investors if Lighthouse's concerts and festivals were not sufficiently profitable.

- Fourth, Wall claimed that all prior investors had been paid back 100% of the money invested. By at least 2016, Wall knew this representation was patently false. At that time, Wall and Lighthouse had failed to fully repay some investors and had failed to pay a single installment to others.

24. Wall represented that the promissory notes were safe and secure investments that would earn high interest rates. In making these representations, Wall intentionally hid from potential investors crucial facts regarding Lighthouse's deteriorating financial condition from declining ticket sales, its growing debt from cash advances, and its inability to fully repay investors. Concealing these crucial facts rendered Wall's statements materially false and misleading.

25. Examples of specific communications with investors whom Wall and Lighthouse never fully repaid include the following:

### Investors A and B

26. Investors A and B were business partners who had attended some of Lighthouse's concerts and had provided Lighthouse with their email address. On November 4, 2017, they received an email from Wall soliciting investments in Lighthouse. On November 10, 2017, Investors A and B replied to Wall's email, asking for more information. Thereafter, they

participated in telephone calls with Wall during which he described the promissory notes and stated that repayment would begin March 1, 2018.

27. On December 1, 2017, Wall emailed Investors A and B information about becoming investors and a draft promissory note that Wall had signed. The information sheet stated that Lighthouse needed investors "to help us pay deposits for our summer festivals," and contained the following statements, all of which were false:

- The "loan is secured whether we make money or not on the festival."

- "To date all our investors have been paid back 100% of the money invested…"

The accompanying promissory note also misrepresented that:

- "All funds are 100% guaranteed."

28. Wall concealed from Investors A and B material information regarding Lighthouse's precarious financial condition from declining ticket sales, growing debt, inability to repay them if the festival was not sufficiently profitable, and the growing number of investors with whom Lighthouse was in arrears.

29. Investors A and B agreed to invest $25,000 in Lighthouse. They wired the money to Wall and Lighthouse on or around December 5, 2017.

30. The final version of Investor A and B's promissory note stated that they agreed to make a $25,000 investment in exchange for a 20% return (for a total payment of $30,000) to be paid back in 12 monthly installments of $2,500 beginning March 1, 2018. The note stated that "[f]unds will be used exclusively for Worship In The Adirondacks [a music festival]."

31. On March 1, 2018, Investors A and B did not receive any repayment.

32. Beginning on March 8, 2018, Investors A and B emailed Wall, inquiring about the status of their repayment. Wall continued to hide Lighthouse's myriad financial problems and instead chose to lie continuously to Investors A and B, emailing them as follows:

- March 9, 2018: "Your March check will be going out on Monday to you." No payment was sent.

- March 22, 2018: "This week two checks have been mailed out to you and I will do my very best to be punctual with our repayment." Wall did send two checks. The first check was dated March 20, 2018. Wall, however, post-dated the second check to prevent Investors A and B from attempting to cash it until April 10, 2018.

- May 25, 2018: "I will be sending May and June payments to you. You should have soon." No payment was sent.

- July 5, 2018: "I plan on getting a check out this next week to you and will work very hard at getting current." No payment was sent.

- September 16, 2018: "I will be restarting your payments in October and going to work very hard to get current with you." No payments were sent.

33. In total, Wall and Lighthouse made only two payments to Investors A and B totaling $5000.

**Investor C**

34. Investor C is an individual who attended a Christian music concert presented by Lighthouse in 2016. Thereafter, Investor C began receiving emails from Lighthouse about upcoming events and soliciting investors. In at least one of these emails, Wall represented that individuals could become "financial partners" with Lighthouse and earn up to 20% interest on their investment.

35. In February 2018, motivated by the desire to support Lighthouse's stated mission to bring Christian music to the mid-Atlantic and New England, Investor C spoke by telephone to Wall about becoming a "financial partner." Wall told this individual Lighthouse would pay 10% interest on investments under $10,000, and 20% interest on investments of $10,000 or more.

36. After speaking with Investor C by phone, Wall emailed this individual. Wall stated, in part,

> "Thank you for your interest in becoming a ministry partner as an investor. We are humbled to hear from you. I would love to answer any questions you might have on being an investor. We need investors to help us pay deposits for our summer festivals. This is going to be our biggest year of ministry and need new investors! The loan is secured whether we make money or not on the festival. Investors are the backbone of our ministry. Without financial partners, we could not move forward booking artists so please know how much we value our investor team. To date all our investors have been paid back 100% of the money invested, you may contact [NAME] at [PHONE NUMBER] who was a former investor with any questions."

37. Wall concealed from Investor C material information concerning Lighthouse's precarious financial condition from declining ticket sales, growing debt, inability to repay Investor C if the festival was not sufficiently profitable, and the growing number of investors with whom Lighthouse was in arrears.

38. Investor C decided to invest a total of $30,000.

39. According to the promissory note Wall and Investor C executed, Lighthouse was obligated to pay Investor C 12 monthly installments of $3,000, with the first payment scheduled for July 1, 2018.

40. Beginning on July 3, 2018, Investor C emailed Wall three times to inquire about the status of the repayment before receiving a response. Wall lied continuously to Investor C about repayments, emailing as follows:

- <u>July 9, 2018</u>: "I apologize for the delay in getting back to you. We had our festivals these past two weekends and just slammed and overwhelmed. I will be getting your first payment out to you in the next few days and do my best stay current and on time." No payment was sent.

- <u>July 19, 2018</u>: Having received no check, Investor C made another inquiry to Wall about repayment, to which he responded, "Please confirm address and I will check in the am." No payment was sent.

- July 20, 2018: "[Investor C] I don't know what I did but I had completely wrong address. I will resend tomorrow and have updated spreadsheet. Again I apologize and not sure what I did to mess that up. August payment will be on time, blessings." No payment was sent.

- August 4, 2018: "I do want to apologize for my silence over the last couple of months. I know we are behind on our partnership. I will be very honest here. We have had very bad ticket sales over the spring which is how we repay our partners and then our festivals did not do as good as we were praying for. I feel terrible that we are behind on our current on the partnership. I will do my very best to get current in the next few weeks…" No payment was sent.

- August 28, 2018: "[Investor C] I apologize for the delay in getting back to you. Please know I 100% hear what you are saying and understand and ask for forgiveness for the struggle. As you know sales have just been awful but sales are slowly picking up for us. And hoping we can get current with you. I will work hard at getting a check out to you in the next few days. Please know how much we value you and I feel awful we have struggled to get the partnership going and repayment started." No payment was sent.

41. Wall ignored the remainder of Investor C's follow-up emails seeking repayment.

42. Wall and Lighthouse never made a single payment to Investor C.

### FIRST CLAIM FOR RELIEF
### FRAUD IN THE OFFER OR SALE OF SECURITIES
(Violations of Section 17(a) of the Securities Act)

43. The Commission realleges and incorporates by reference the allegations in paragraphs 1 through 42 above.

44. During the Relevant Period, Lighthouse's promissory notes were securities under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)].

45. By reason of the conduct described above, Wall and Lighthouse, in the offer or sale of securities, by use of the means and instruments of transportation and communication in interstate commerce or by use of the mails, directly or indirectly, acting with the requisite degree of knowledge, state of mind, or negligence, have (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omissions

11

to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business which operate or would operate as a fraud or deceit upon the purchaser.

46. By engaging in the conduct described above, Wall and Lighthouse, directly or indirectly, violated and, unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
## FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES
(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder)

47. The Commission realleges and incorporates by reference the allegations in paragraphs 1 through 42 above.

48. During the Relevant Period, Lighthouse's promissory notes were securities under Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(10)].

49. By reason of the conduct described above, Wall and Lighthouse, by engaging in the conduct described above, directly or indirectly, by the use of means or instrumentalities of interstate commerce or use of the mails, in connection with the purchase or sale of securities, with scienter, (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business that operated or would operate as a fraud and deceit upon other persons.

50. By engaging in the conduct described above, Wall and Lighthouse, violated, and unless restrained and enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF
## <u>UNREGISTERED OFFERINGS OF SECURITIES</u>
(Violations of Sections 5(a) and 5(c) of the Securities Act)

51. The Commission realleges and incorporates by reference the allegations in paragraphs 1 through 42 above.

52. By reason of the conduct described above, Wall and Lighthouse, directly or indirectly: (a) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement has been in effect and for which no exemption from registration has been available; and/or (b) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement has been filed and for which no exemption from registration has been available.

53. By engaging in the conduct described above, Wall and Lighthouse, violated, and unless restrained and enjoined, will continue to violate, Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a), (c)].

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, the Commission respectfully requests that the Court:

A. Enter a permanent injunction restraining each of the Defendants, their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

B.     Enter a permanent injunction restraining Wall and Lighthouse, directly or indirectly, including, but not limited to, through any entity owned or controlled by Wall or Lighthouse, from participating in the issuance, purchase, offer, or sale of any security, provided, however, that such an injunction shall not prevent Wall from purchasing or selling securities for his own personal account.

C.     Order the Defendants to disgorge on a joint and several basis, with prejudgment interest, all ill-gotten gains obtained by reason of the unlawful conduct alleged in this Complaint.

D.     Order the Defendants to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

E.     Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered.

F.     Grant such other and further relief, including equitable, as this Court may deem just and appropriate.

## JURY DEMAND

The Commission demands a jury in this matter for all claims so triable.

DATED this 4th day of April, 2019

Respectfully submitted,

*David London* (signature)

_____
David H. London (Mass. Bar. No. 638289)
Gretchen Lundgren (Mass. Bar No. 644742)
*Counsel for Plaintiff*
**SECURITIES AND EXCHANGE COMMISSION**
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA 02110
(617) 573-8997 (London direct)
(617) 573-4590 (Facsimile)
LondonD@sec.gov  (London email)
LundgrenG@sec.gov (Lundgren email)